MARTIN DELANEY *vs.* ELIZA A. DUTCHER and others.

February 16, 1877.

Agreement between Surviving Partner and Widow and Next of Kin of Deceased Partner, for the Continuance of the Business, held to Create a Partnership.— Defendant G., and one D., in his lifetime, were equal copartners in the hotel business and valuable property employed therein, being also, at the death of the latter, seized and possessed of a leasehold interest in certain premises demised for hotel purposes for a definite term of years, which had not then expired. On the death of the decedent the partnership affairs were left in an unsettled condition, with large assets and liabilities, the former of which, however, were greatly in excess of the latter. Decedent left, as next of kin, three children and his widow, Mrs. D., the other appellant, defendants herein, who claimed an interest in such firm property. Thereupon all the defendants entered into a written agreement with each other, for the purpose, as therein declared, of settling all disputes between them concerning said partnership business and property, definitely fixing their respective interests therein, and continuing said business as therein provided, and which contained mutual covenants, stipulating, among other things, in substance, as follows: That said business should be continued to the end of the lease by said G., as surviving partner of the said D., using therein the capital and property employed by the old firm, and paying its debts. G.'s share and interest in said business and property was fixed at one

undivided half part thereof, and each of the other appellant defendants at one undivided eighth part thereof. Mrs. D. was to furnish, to be invested in said business, some $14,000, to be reimbursed to her, with interest, out of the accruing profits. Each party was to share in the profits according to his interest in the business and property, as fixed by the agreement, and the same were to be divided and apportioned annually. Upon the termination of the business such property and its proceeds were to be divided in like manner. The business was to be under the management and control of said G., subject, in part, to the counsel and direction of Mrs. D., each of whom was to receive compensation therefor. A full inventory of all the assets and property of the business concern was to be made. New books of account were to be opened and kept, showing all the transactions in said business, and containing a stock-account, showing the amount of property invested therein, and the interests of the respective parties therein as fixed by said agreement, and these were subject to inspection at all times, by any of the parties, through an agent agreed upon and designated. Provision was also made for the renewal of furniture and for repairs, and prohibiting the withdrawal of any money from the business by either of the parties, except to the extent, and upon certain conditions, therein mentioned. *Held*, 1. That the legal effect of these stipulations was to create a partnership between the defendants as to third parties dealing with them, with knowledge of the agreement, and upon the faith of its provisions.

**Same—Estoppel.**—2. That, as to such parties, said defendants were estopped from denying the existence of the state of facts assumed by the agreement.

Action against the defendants E. R. George, Eliza A. Dutcher, Minnie C. George, Austin A. Dutcher, William S. Timberlake, and Jennie E. Timberlake, as partners under the name of E. R. George, and, as such partners, engaged in carrying on the Metropolitan Hotel in the city of St. Paul. Six causes of action are alleged in the complaint, viz., five promissory notes signed by E. R. George, amounting to $3,075.15, the consideration of which was meat furnished for the use of the hotel, and a balance of account, amounting to $1,095.50, also for meat furnished the hotel, and charged in the name of E. R. George. The complaint sets forth at length the agreement between the defendants, the substance of which is stated in the opinion, and alleges that plaintiff knew of the agreement, and relied on it in giving the credits stated in the complaint. The defendant George made default. The other defendants answered, admitting the execution of the agreement, but denying the

partnership, etc. At the trial in the district court for Ramsey county, before *Brill*, J., the court instructed the jury that the effect of the agreement was to constitute all the defendants partners, except William S. Timberlake. As to him the action was ordered to be dismissed. The plaintiff excepted to this order of dismissal, and appealed from the judgment entered thereon, which appeal is reported as the next following case. The jury found a verdict against the other defendants, a new trial was denied, and they appealed.

*Harvey Officer* and *Horn & Billson*, for appellants.

*Morris Lamprey*, for respondent.

CORNELL, J. The principal point presented for consideration by the exceptions in this case is whether the agreement marked " Exhibit A," and set forth in the plaintiff's complaint, constituted the appellant defendants partners as respects the plaintiff, a third party, who dealt with them with knowledge of such agreement. It is admitted that Gilbert Dutcher, in his lifetime, and the defendant George were equal copartners, engaged in the hotel business in St. Paul, having a lease of the Metropolitan Hotel, and owning the furniture, etc., therein; that Dutcher died in October, 1873, leaving, as next of kin, his children, the defendants Austin A. Dutcher, Minnie C. George, and Jennie E. Timberlake, the defendant Eliza A. Dutcher, his widow, and the defendant E. R. George, surviving partner, in possession of said hotel and partnership property and business. At the time of his death the firm assets amounted to $63,000, and the liabilities to $21,000.

The agreement was entered into on October 25, 1875. It recites, as facts, that one Gilbert Dutcher died on October 1, 1873, leaving, as his heirs at law and next of kin, his widow, Eliza A. Dutcher, his son, Austin A. Dutcher, his daughter, Jennie E. Timberlake, wife of William S. Timberlake, and his daughter, Minnie C. George, wife of E. R. George, the defendants herein named; that the said

decedent, during his life and at the time of his death, and the said E. R. George were engaged together in the business of carrying on the Metropolitan Hotel, in the city of St. Paul, in the name, however, of the said Gilbert Dutcher ; that the said George claims that the said Dutcher and himself were, at the time of the decease, equal partners in the said business, and the owners in equal shares, as such copartners, of all said business and the property thereto belonging ; that no division of the profits of said business, or settlement of accounts between them, as such copartners, had ever been had prior to the death of said Gilbert Dutcher. It further appears from said agreement that said Gilbert Dutcher died possessed of certain individual property, in no way connected with said partnership business, among which were certain life policies, amounting to about $15,000, payable to his legal representatives upon his decease, and that all interest therein was duly released to his said widow, subject to the payment by her of a small claim against the said decedent in favor of said alleged partnership.

The agreement recites the existence of certain differences and disputes between the parties thereto, in regard to the said claim of the said George in respect to said alleged partnership business and property, and the extent and character of the interest claimed by each of the said parties in the premises, and that " all the parties hereto are desirous that the said business shall be continued as hereinafter provided," and then proceeds by expressly declaring that its covenants are mutually entered into by said respective parties " in order to adjust and finally settle all matters of doubt and difference in the premises, and to fix and forever determine the rights of the parties hereto, and to provide for the continuance of the said hotel business."

The subsequent provisions of the agreement will be found, upon examination, to conform to such its declared purposes and objects. It contains fourteen distinct specifications.

The first settles upon the relations which said George and said decedent sustained to each other in respect to said hotel business and property, and declares them to have been equal copartners therein.

The second determines the debit amount of the account of each with the firm, which, it is agreed, shall be treated and regarded as settled and cancelled.

The third ascertains the amount of the indebtedness of Austin A. Dutcher to the firm, and provides that the same, amounting to $4,368.41, " shall be charged to him on the account-books to be opened and kept in said business, to be continued as hereinafter provided, and shall be paid and accounted for by him in the manner herein provided."

The fourth fixes the indebtedness of William S. Timberlake to the old firm at $432.61, and provides that the same " shall be transferred to the account of, and charged against, the said Jennie E. Timberlake in the account-books to be opened and kept in said business, so to be continued, and shall be paid and accounted for by her in the manner hereinafter provided."

The fifth relates to the settlement of an account standing upon the firm books, and designated as " Horse and Carriage Account," which, it is assumed, represented moneys withdrawn from the firm business by decedent for his own private purposes, etc.

The sixth contains mutual covenants that the said hotel business shall be continued by the said E. R. George, as surviving partner of the said Gilbert Dutcher, deceased, until the time of the expiration of the lease of the hotel; that he shall conduct and manage the business, giving thereto his entire time and attention; that, from the proceeds of said business, he shall make such repairs and renewals of furniture, and other things, as shall be necessary to keep up the hotel to the standard of a first-class hotel; pay the debts of the late firm, also all debts contracted in said business since the death of said Gilbert Dutcher, and there-

after to be contracted therein, and that the said Eliza A. Dutcher shall be consulted in the general management of the business.

The seventh and eighth provide for the payment of the individual debts of the said decedent, other than those due the firm, out of his private property and so much of the insurance moneys as may be necessary therefor, and for a relinquishment of all claims on the part of the other parties upon the balance of the insurance moneys to the widow, as her separate property.

Ninth. This balance, amounting to some $14,000, it is agreed, "shall be put into the hotel business, and credited on the account-books to be opened and kept in said business to the individual account of the said Eliza A. Dutcher;" and "after all the debts of the said late firm, and such as have been contracted since the death of the said Gilbert Dutcher, or shall hereafter be contracted in said business, shall be paid, and the business is in good financial condition, she may draw out the same, with 7 per cent. interest, from the proceeds of the business;" and it is also provided that "she may from time to time draw out of the said business such small sums as may be absolutely necessary for her private use, and the sums so drawn out shall be charged on said account-books to her individual account, and deducted from the amount so to be paid to her on account of the investment of said insurance money in said business."

Tenth. This prohibits the withdrawal of any money from the business until all debts contracted therein, as well as the debts of the late firm, are paid, except the salary and board allowed by the agreement to the said George and to Mrs. Dutcher, and except certain small sums, not to exceed $500, which, it is provided, Austin A. Dutcher may from time to time withdraw for his private use, provided said George and Mrs. Dutcher, in their opinion, deem the financial condition of the business such as to justify it, and consent

thereto. And it is in express terms declared to be the true intent and meaning of the agreement "that no money shall be withdrawn from said business, except as aforesaid, until all the debts contracted in said business shall be fully paid, all expenditures necessary to keep the furniture and other property required in said business in good repair and up to the requirements of a first-class hotel, and to supply said house with the necessary stock and supplies for the economical management of said business, shall have been made, and there shall remain a *surplus from the profits* of said business, after all such payments and expenditures, to be divided."

Eleventh. This provides for an annual division of " all profits that shall arise and accrue from said business, as follows, to wit," to E. R. George, one-half part thereof, and to each of the other appellant defendants one-eighth part thereof.

Twelfth. This allows a salary to said George, from October 1, 1873, of $2,000 a year, in addition to board for himself and family, and also provides that the said Eliza A. Dutcher shall have board and rooms in the hotel for herself and mother, without charge, during the continuance of said business.

Thirteenth. This requires that a full and true inventory shall be made of all the assets and property of said business concern, as of the date of October 1, 1873; that new books of account shall be opened and kept, showing the transactions in said business, commencing as of that date, and containing a stock-account, showing the amount of property invested in said business, and " *the interests of the respective parties hereto therein, as the same are settled and fixed by this instrument.*" It provides for a monthly balance-sheet to be made from said books, which shall be subject to the inspection of all the parties, and designates J. C. Burbank, Esq., a common agent for each and all the parties, to make

full examination of the said books for their benefit, at any and all times, on request of any party,

Fourteenth. This provides that "at the expiration of said business all the property acquired in connection therewith, and owned in common by the parties hereto, shall be sold," the debts fully paid, etc., and for a division of the balance of the proceeds remaining, among the parties, according to their respective interests in said property and business — that is to say, one-half thereof to said George, and one-eighth part thereof to each of the other appellant defendants.

From this summary of its provisions it is apparent that the defendants, claiming different interests in the property and business belonging to E. R. George and Gilbert Dutcher, decedent, as equal copartners at the time of the death of the latter, undertook by said agreement to settle and adjust such partnership matters as among themselves, to definitely fix and determine their respective interests therein, and to provide for the future continuance of the business, under and in pursuance of the terms and provisions of the agreement. Their future relations to each other, in respect to this property and business, under this agreement, were clearly to be such as were created and established by virtue of its terms and provisions, and not, as is claimed by defendants' counsel, by operation of law.

It is claimed that no partnership was established, because it was simply the intention of the parties to provide for the continuance of the old partnership business by the surviving partner until the expiration of the lease, and with such rights and powers alone as belonged to him as such surviving partner; and this position is based principally upon the stipulation in the agreement that "said hotel business shall be continued by the said E. R. George, as surviving partner of the said Gilbert Dutcher, deceased, until the time of the expiration of said lease." If this claim is correct,

the question very pertinently arises, what was the necessity for any agreement at all? But the whole scope of its provisions and stipulations is inconsistent with this idea. George's duties as surviving partner were simply to settle and close up the firm business, and his powers were such only as were adequate to that end. He had no right nor power, as such, to increase the capital in such business, nor to associate with him, in its management, any person, under an arrangement that such person should contribute an additional amount to the capital, with the right, not only of reimbursement out of the profits to be earned, but to participate in the profits themselves, as such, according to his interest in the whole capital, besides receiving a compensation for his personal services. And it may well be doubted, also, whether, as such surviving partner, he had any right to receive any salary for his services in so winding up the business.

Under this agreement, however, George was required to give his entire attention to the business, for which he was to receive compensation in an annual salary and board for himself and family. He was obligated to consult Mrs. Dutcher in " all the important transactions of said business, and in regard to its general management," and she was entitled to receive board and rooms for herself and mother during the continuance of the business. The capital to be employed in the business was to consist of the property and assets belonging to the old firm, subject to its liabilities, increased by some $14,000, to be put into the concern and invested therein by Mrs. Dutcher, from her individual resources. For reimbursement of the amount of the sum so advanced, and interest, she was to look solely to the resulting profits to accrue from the business, and not to the personal responsibility of any one; and she was clearly entitled to a specific lien upon such profits, and an interest therein, to the extent of that amount, and also to a like interest and lien with the rest upon any additional profits, according to her proportionate share of the capital and

property, as fixed by the agreement. The capital thus created was to constitute a common fund for the purpose of carrying on the said hotel business. The proceeds were to be received on joint account, and subsequently divided among the defendants according to their respective interests in the common fund, as determined by the agreement. Books of account were to be opened and kept, showing the amount of property invested in the business, the interests of the respective parties therein, as settled and fixed by said instrument, and all its transactions; and the right of inspection at any and all times was secured to all the parties through a common agent chosen and designated for that purpose. Each party had a specific lien and interest in all accruing profits, proportionate to his interest in the common fund, and express provision was made for an annual division and apportionment thereof.

The necessary legal effect of these stipulations was to create a partnership between the appellant defendants, as to parties dealing with them with knowledge of the agreement, and on the faith of its provisions. *Manhattan Brass Co.* v. *Sears*, 45 N. Y. 797; *Waugh* v. *Carver*, 1 Smith Lead. Cas. 968.

Defendants' offers to show the appointment of Mrs. Dutcher as administratrix of the estate of her husband, and the condition of such estate, without any offer of evidence bringing home to the plaintiff knowledge of such facts, were properly overruled. As to him they were estopped from denying the state of facts assumed to exist by the agreement, and upon the faith of which the credit from plaintiff was obtained.

The verdict, in our judgment, was fully supported by the evidence. The notes introduced were shown to have been given on account of supplies furnished the hotel, and used in the partnership business.

Order affirmed.

NOTE.—Two other cases, (*Hart* v. *Dutcher* and *Morrison* v. *Dutcher*,)

involving the construction of the contract above set forth, were argued by the same counsel and at the same time with the foregoing case, and were decided .by the court in accordance with the above opinion.