904

## STEVENS v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
December 14, 1928.

No. 7990.

Henry G. Young, of Willmar, Minn., and Loy J. Molumby, of Great Falls, Mont., for plaintiff in error.

J. H. Fraine, Regional Atty. for United States Veterans' Bureau, of Minneapolis, Minn. (Lafayette French, Jr., U. S. Atty., of Austin, Minn., on the brief), for the United States.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and POLLOCK, District Judge.

VAN VALKENBURGH, Circuit Judge. On or about June 29, 1926, plaintiff in error filed suit in the District Court of the United States for the District of Minnesota to recover upon a certificate of war risk insurance. He entered the naval service of the United States February 27, 1918. April 10th following, he made application for insurance under the provisions of the War Risk Insurance Act, and thereafter there was duly issued to him a certificate in the sum of $10,000. May 14th he suffered an injury to his knee, resulting from his leg being caught in the door of a large warehouse. He was discharged from the service July 2, 1919. Between the time of the accident and his discharge from the service he had been treated in government hospitals and was invalided home. The injury to his leg was aggravated through falls and other mishaps brought about by his infirmity. During the years

following he has been repeatedly examined by the Bureau, has had at least two operations, and has been periodically in hospital. Intervening periods have been spent at his home in Minnesota. Throughout a great part of the time prior to April 13, 1925, he was rated by the Bureau on the basis of temporary total disability. In the meantime, since his discharge, he had paid no premiums and his insurance had lapsed by reason thereof. On the date last mentioned he made application to the Veterans' Bureau to reinstate his yearly renewal term insurance under the Remedial Act of 1921 (42 Stat. 156), which reads as follows: "Sec. 408. In the event that all provisions of the rules and regulations other than the requirements as to the physical condition of the applicant for insurance have been complied with, an application for reinstatement of lapsed or canceled yearly renewable term insurance or application for United States Government life insurance (converted insurance) hereafter made may be approved: Provided, That the applicant's disability is the result of an injury or disease or of an aggravation thereof suffered or contracted in the active military or naval service during the World War: Provided further, That the applicant during his lifetime submits proof satisfactory to the director showing the service origin of the disability or aggravation thereof and that the applicant is not totally and permanently disabled." This section has since become section 304 of the World War Veterans' Act of 1924 (38 USCA § 515).

Plaintiff in error testifies that he was advised by the Bureau to reinstate his insurance for the reason that if anything happened to him his wife and children would get no benefits from the government unless he had insurance. In reaching a conclusion on the matter he advised with one Giles O. Kelly, who at that time occupied in the Veterans' Bureau the position of Co-operator in Charge of Insurance. At the time of the trial Mr. Kelly was no longer in the government service. He testifies, and it is so conceded, that his function was, as far as possible without conflict with the statutes, and the rules and regulations of the Bureau, to aid disabled veterans to secure the best possible status under the law. It will be noted that the act permitting reinstatement required, as a prerequisite, that the applicant during his life should submit proof satisfactory to the director that he was not then totally and permanently disabled. The blank form, furnished by the department, upon which plaintiff in error made his application for reinstatement, as a part of the showing required

for the satisfaction of the director, contained, among other things, this question: "Are you now permanently and totally disabled?" to be answered by yes or no. To this question, upon the advice of Kelly, the applicant answered, "No." Kelly states that he gave this advice because his judgment was influenced considerably by the records in the case, which showed that the applicant was not rated as permanently and totally disabled, and further, because he believed it to be to the best interests of plaintiff in error to have his insurance reinstated and feared the possibility of subsequent legislation as affecting such application. He was aware that if on this questionnaire the applicant stated that he was permanently and totally disabled the Bureau might take him at his word and he would be disqualified for reinstatement by the terms of the act. It is very evident that Kelly acted in good faith and for what he considered to be the best interests of plaintiff in error. In fact, this is not contested. In his position as Co-operator he was to act as an advocate of the veterans without violation of any trust reposed in him by the Bureau. At that time the question of permanency of injury, if thought of at all, was speculative merely. The Bureau had never so rated the applicant, nor had any medical examiner, so far as appears from the record. Dr. Reed, a specialist in orthopedic surgery, and in the employ of the United States Veterans' Bureau from 1920 to 1924, called as a witness on behalf of plaintiff in error, testified that the applicant had been examined by him, and under his directions, a number of times, beginning in 1921. During this time an operation was performed by Dr. Giessler which had some beneficial effect upon the knee. The report made was the following: "Disability: Over 10%: Total temporary: due to service. This patient is unable to assume duties for two or three months yet, and he should be under observation and instructed to report back not later than two months. He will later be fit for vocational training." Other examinations were made by Dr. Reed, and his knowledge of plaintiff in error and of his condition continued between April, 1921, and October, 1924. This trial began March 15, 1927. Dr. Reed made a further examination of plaintiff in error on March 12th. His conclusion at that time was that Stevens was suffering from traumatic arthritis in knee and spine with accompanying hysteric neurasthenia. He reached this conclusion in the light of his present knowledge and said: "At no time did I think he was totally disabled until the present time." Other medical examiners introduced by plaintiff in error were of opinion that at the time of trial the disability was total and permanent. Their testimony goes no further than that. The court, being of opinion that the policy was reinstated upon the agreed basis that the insured at the time was not permanently and totally disabled, that upon that basis it constituted a new contract between the parties, that this contract had never been repudiated, and that plaintiff in error was estopped to deny this basic fact so long as the contract stood, in the absence of fraud, accident, or mistake, granted a motion to dismiss the case.

For many years prior to the institution of this suit, and since, plaintiff in error has received substantial sums from the government by way of compensation in accordance with the rating made by the Bureau. The reinstatement of his insurance entitles him to recover upon his new contract upon proof of total permanent disability. That he is now totally and permanently disabled, within the meaning of the law applicable, seems fully established. This is the view to be gathered from the record, was the opinion of the trial judge, and was practically conceded by counsel at the hearing in this court. The only practical question in the case is whether that condition can relate back to the date of his discharge while his original insurance was still in force, with the result that he would presently get a large sum in arrearages with a lesser amount to be received in the future. The legal question involved is whether this can be done in view of the changed relationship resulting from the attitude of the parties taken as a basis of the reinstatement made. Our judgment is that it cannot be done.

As stated by the trial court, the reinstatement made brought into existence a new contract between the parties, and the estoppel for which the government contends is estoppel by contract. It is not, strictly speaking, a species of estoppel in pais, since it is based wholly on a written instrument. The rule is thus stated in 21 Corpus Juris, 1111, par. 111: "If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident, or mistake."

Mr. Bigelow, in his work on Estoppel, states the rule as follows:

"The estoppel in this class of cases is fixed by the execution of the contract; nothing further need be shown, where the fact in question is clearly agreed or assumed. The question, then, will be whether the fact has been so agreed; * * *

"On the other hand, this class of estoppel

being founded upon contract, it can seldom be an answer to the alleged estoppel, unlike the case of estoppel by conduct, that the party supposed to be estopped acted in ignorance of the facts and under mistake. There are some exceptions, it is true, but they appear to belong mainly to those cases in which the fact in question turns upon some act done in pursuance of the contract,—as in the case of delivery of possession to a tenant constituting the ground of the tenant's estoppel,—in distinction from an agreement of the fact itself."

Bigelow on Estoppel (6th Ed.) 496.

In McFarland v. McFarland, 278 Mo. 1, 211 S. W. 23, it is held that an express or implied admission which may estop may arise out of a contract by which one is estopped from denying that which he has expressly or by implication agreed to be true. It is further held that: "It can seldom be an answer to an estoppel founded upon contract, unlike estoppel by conduct, that the party to be estopped acted in ignorance of the facts and under mistake." And in Bricker v. Stroud Bros., 56 Mo. App. 183, 188, estoppel by contract is stated to be "a term which is intended to embrace all cases in which there is an actual or virtual undertaking to treat a fact as settled." To the same effect is Delaney v. Dutcher, 23 Minn. 373.

The record convinces that plaintiff in error, without fraud, deceit, misrepresentation, or undue influence, elected to have his insurance reinstated upon the terms specified in the act permitting reinstatement. To that end, the fact that he was not at that time totally and permanently disabled was assumed. Neither he nor any officer of the government at that time viewed his disability as permanent. At the time his application was made his recourse against the government under his certificate of war risk insurance, which had lapsed for nonpayment of premiums, was at least problematical. By reinstatement he acquired substantial advantages, and the government, from a financial standpoint, sustained corresponding disadvantages. These advantages are not merely nominal—they are substantial. The government became liable for the payments provided in the insurance contract if plaintiff in error thereafter became permanently and totally disabled or died. It would also be obliged, at the election of plaintiff in error, to convert such insurance into one of the many more desirable forms, including an ordinary life policy, under the provisions of the Act of August 9, 1921, and its amendments (42 Stat. 147). Under such a policy, not only would the terms of payment be changed to the advantage of the insured, but liability on the policy would accrue for death from causes other than those of service origin. It could not be pleaded in defense that plaintiff was permanently and totally disabled prior to the date of reinstatement.

We think under the facts before us, and the law applicable thereto, that plaintiff in error is estopped to recover upon his original certificate on the ground of total permanent disability sustained while that certificate was still in force. Judge Bourquin, in the district of Montana, in Wills v. United States, 7 F. (2d) 137, reached this same conclusion. A contrary view is expressed by the District Court for the Southern District of Texas, in Dobbie v. United States, 19 F.(2d) 656. That case, however, may be easily distinguished from the fact that the court found that plaintiff did not intend to make the election to reinstate the policy. It would, in our judgment, be a dangerous precedent to establish that one who voluntarily, and in the absence of fraud or mistake, has obtained reinstatement of insurance under the terms prescribed in the Remedial Act, may thereafter, because of conditions later developing or better understood, repudiate the contract obligations thus entered into. It would open an avenue to fraud and imposition and greatly embarrass the administration of the law. The government has been extremely liberal in extending and preserving rights which have been technically lost through misfortune or inadvertence. As has been said, the present total permanent disability of plaintiff in error has been made clearly apparent. Upon further application to the Bureau, it would seem that recovery under the reinstated certificate should be awarded without hesitation and without further litigation.

The judgment below is affirmed, without costs in this court.