## UNITED STATES v. BUZARD.

Circuit Court of Appeals, Ninth Circuit. July 1, 1929.

No. 5727.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., both of Seattle, Wash. (William Wolff Smith, General Counsel, and James O'C. Roberts and James T. Brady, Attys., U. S. Veterans' Bureau, all of Washington, D. C., of counsel), for the United States.

Ralph A. Horr and Edward K. Marohn, both of Seattle, Wash., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. In November, 1917, while appellee was in the Army, he applied for, and was granted, war risk term insurance in the sum of $10,000. Premiums thereon were paid to and including the month of June, 1919, but not thereafter. Subsequently he applied for, and there was granted him, a reinstatement of $5,000 of the policy, effective as of March 1, 1920, and on the same date this reinstated term insurance was, upon appellee's request, converted into an ordinary life policy, the premiums upon which he paid only up to and including May, 1920. On November 3, 1920, he applied for a reinstatement of the remaining $5,000 of the original insurance, but his application was denied for the reason that he failed to execute the required forms.

Ignoring entirely these later proceedings, he brought this suit to recover upon the original policy granted in November, 1917, alleging that while it was in force, namely, in June, 1918, he "was struck by a fragment of high explosives and gassed from which time he has been totally and permanently blind and disabled." Appellant answered, denying the averment of total and permanent disability, and setting up the later transactions to which we have referred by way of estoppel, merger, or novation. To this answer appellee filed a reply, in which he denied that in his application for reinstatement of the term insurance he represented that he was not then totally or permanently disabled, and affirmatively alleged that, when he signed these later applications, he was incompetent to transact business, because he was totally blind, and in great mental and physical pain. He further averred that the applications were on printed forms, which had been filled out by a government agent before they were presented to him, and that he signed them upon the representation that they were solely for the purpose of preserving his then existing rights under the original policy of insurance; and also that he was ignorant of their contents and signed them, under mistake and misapprehension, for the sole purpose of safeguarding and perpetuating his existing rights under the original policy. A trial by jury resulted in a verdict finding generally for the plaintiff and fixing "the date of his total and permanent disability as of June 30, 1919." From an appropriate judgment in harmony therewith for the entire amount of the original term insurance, the government appeals.

Under its instructions the court submitted but one ultimate question to the jury. That is to say, it being conceded by plaintiff that his payments of premiums were effectual to keep the policy alive only to July 30, 1919, and by the government, that there was total and permanent disability from and after July 31, 1922, the court advised the jury that the burden was upon the plaintiff to show that he was totally and permanently disabled on the first of these dates, and that such condition continued up to the last date and that, if the jury were convinced by the evidence that such was the fact, their finding should be in his favor. They were further instructed that they could consider the facts relating to the applications for reinstatement and the conversion of the $5,000 to a life policy and the other matters affirmatively pleaded in the answer and in the reply thereto, not as substantive defenses but only as circumstances bearing upon the main issue thus defined.

In the course of the trial, defendant seasonably interposed motions for a nonsuit and for an instructed verdict in its favor, to the adverse rulings upon which it excepted. Without success, it also requested an instruction to the effect that, if the jury found that about March 2, 1920, plaintiff applied for, and was granted, a conversion of $5,000 of the original term insurance into a $5,000 policy of ordinary life war risk insurance, he could not recover more than $5,000 on the original policy; and a further instruction that, if on that date he made application for a reinstatement of $5,000 of the original term policy and a conversion of the same into an ordinary life policy, and such life policy was issued to him in response thereto, and if he represented in such application "that he was then in as good health as at the date of his discharge from service," in that event the jury could not find "the plaintiff to have

been totally and permanently disabled prior to the time of such application." Exception was duly taken to the denial of each request.

By the Act of October 6, 1917 (40 Stat. 398), establishing such insurance, the Director was authorized, subject to the supervision of the Secretary of the Treasury (see sections 13 and 402), to make and promulgate rules and regulations appropriate to carry out its purpose and specifying the terms and conditions of insurance contracts thereunder; and by section 404 it was directed that the "regulations shall provide for the right to convert [term insurance] into ordinary life, * * * and into other usual forms of insurance. * * * By Bulletin No. 1 of such regulations, promulgated October 15, 1917, it was provided, among other things, that, "if any premium be not paid, either in cash or by deduction as herein provided, when due or within the days of grace, this insurance shall immediately terminate, but may be reinstated within six months upon compliance with the terms and conditions specified in the regulations of the bureau." And by Treasury Decision No. 47 W. R., promulgated July 25, 1919, in force on March 2, 1920, it was provided that:

"2. In every case where reinstatement, in whole or in part, of lapsed or cancelled insurance, is desired, the insured shall file with the Bureau of War Risk Insurance a signed application therefor, and make tender of the premium for one month (the grace period) on the amount of insurance to be reinstated, and also of the amount of at least one month's premium on the reinstated insurance. In cases where the insured desires to convert his lapsed term insurance he shall make tender of the premium for one month (the grace period) on the amount of term insurance to be reinstated and converted, and also of the first premium on the converted insurance.

"3. Insurance lapsed or cancelled may be reinstated within eighteen months after the month of discharge, provided the insured is in as good health as at date of discharge or at the expiration of the grace period, whichever is the later date, and so states in his application. * * * *"

In 32 Op. Atty. Gen. at pages 379, 380, we find what would seem to be a fair characterization of the different kinds of insurance herein involved, as follows:

"Speaking generally, those forms of insurance are more advantageous from the viewpoint of the insured than is the renewable term insurance. For example: The converted insurance has a loan value, a surrender value, and an extended insurance value, whereas term insurance has none of these values. At maturity converted insurance may be paid in a lump sum or in accordance with certain other options, whereas term insurance is payable in 240 monthly installments. Endowment policies maturing in 20 years, in 30 years, and at age 62 are provided, whereas in term insurance there are no endowment features whatever."

It is thought to be clear that as to the second $5,000 of the original term insurance there is no ground for the application of the principles of estoppel, waiver, merger, or novation—defenses invoked or suggested by the government. No new contract was entered into respecting or based upon it, it was in nowise superseded, plaintiff got no benefit on account of it, and in respect of it the government lost nothing, and was in nowise prejudiced by what occurred after its termination. If it can be said that plaintiff at any time made representations directly or indirectly relating to it, inconsistent with his contention now that he was totally and permanently disabled on and after June 18, 1918, they may be of probative value on the general issue, and as tending to discredit his testimony, but they do not necessarily conclude the issue; and hence that branch of the case was correctly submitted to the jury.

The other $5,000 presents substantially different considerations. The underlying contention for appellee seems to be that by the verdict of the jury it is conclusively established that prior to and on March 2, 1920, he was totally and permanently disabled; that therefore upon that date his term contract had ceased to be insurance, and had been superseded by a matured claim; that for these reasons the parties were powerless either to reinstate or convert, and hence that all that was done looking to those ends was ineffective and void. And such, it is to be inferred, was the theory adopted by the court below. But the conclusion does not necessarily follow. Had the ultimate fact of total disability then been known to the parties, the position might be tenable; that we do not decide. But admittedly it was not known. Total and permanent disability is often a question of great uncertainty, and frequently it is incapable of conclusive proof. With all the ascertainable facts and circumstances before them, both laymen and scientific experts are sometimes at variance in their conclusions. But in the practical administration of the law junctures arise where it becomes necessary to make a determination for the future guidance of the parties in the performance of their obligations and in the assertion of their

rights. If at such time the insured and the government officers, with all available information before them, in good faith agree upon resolving what both sides recognize as a doubtful issue, one way or the other, and, upon the assumption that the status so agreed upon is correct, enter into a new contract to supersede the old, and both thereafter act pursuant thereto, it would lead to intolerable confusion, and often result in injustice, if now one, and then the other, party may, when his interests so dictate, repudiate the contract with the contention that the determination of the doubtful issue was erroneously made. The case would be not unlike an ordinary compromise where parties, being in doubt as to their rights and obligations, make a binding adjustment by mutual agreement. In Stevens v. United States, 29 F. (2d) 904, involving a similar issue, the Circuit Court of Appeals for the Eighth Circuit, in apparent recognition of the principle said:

" * * * The fact that he [the insured] was not at that time totally and permanently disabled was assumed. Neither he nor any officer of the government at that time viewed his disability as permanent. At the time his application was made his recourse against the government under his certificate of war risk insurance, which had lapsed for nonpayment of premiums, was at least problematical. By reinstatement he acquired substantial advantages, and the government, from a financial standpoint, sustained corresponding disadvantages. These advantages are not merely nominal—they are substantial. The government became liable for the payments provided in the insurance contract if plaintiff in error thereafter became permanently and totally disabled or died. It would also be obliged, at the election of plaintiff in error, to convert such insurance into one of the many more desirable forms, including an ordinary life policy, under the provisions of the Act of August 9, 1921, and its amendments (42 Stat. 147). Under such a policy, not only would the terms of payment be changed to the advantage of the insured, but liability on the policy would accrue for death from causes other than those of service origin. It could not be pleaded in defense that plaintiff was permanently and totally disabled prior to the date of reinstatement."

We are considering only the question whether or not the finding here of total and permanent disability is ipso facto conclusive against the defenses pleaded by the government. That was the only issue of fact submitted to the jury or determined in the court below. We are of the opinion that, under the circumstances assumed, and in the absence of actionable fraud or mistake, the contract of converted insurance would become a substitute for, and supersede, the earlier contracts in respect of the $5,000 covered thereby. If it was entered into through fraud or mistake, it may be rescinded or avoided by appropriate proceedings under principles applicable to such cases. No attempt has been made to accomplish that result, and, so far as appears, the contract is outstanding, and under it plaintiff may have certain rights and the government certain obligations. These rights plaintiff has not offered to surrender. To be sure, the policy has lapsed for failure to pay the premiums, but, if valid when executed, it remained in force for a period. Whether the plaintiff succeeds or fails in this action, the government has no assurance that he will not assert claims alleged to have ripened during that period. The original term insurance also lapsed, but it is made the basis of this suit.

Perhaps, in the absence of argument on the point, we ought not to pass upon a question of possible future procedure, but at least we may make it clear that, by our reference to "appropriate procedure" to rescind the reinstated and converted insurance contracts for fraud or mistake, we are not to be understood as necessarily holding that a preliminary, plenary suit in equity for that purpose is requisite. Possibly section 274b of the Judicial Code (28 USCA § 398) affords an adequate remedy, provided, of course, the plaintiff by his answer pleads in substance the facts necessary for an independent bill. See Whitney v. Johnson (C. C. A.) 14 F. (2d) 24, and Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232.

Reversed, with directions to take further proceedings not out of harmony herewith.