## DUGGAN v. UNITED STATES.

District Court, D. Minnesota, Third Division. December 30, 1929.

Schwartz & Halpern, of Minneapolis, Minn., for plaintiff.

Lewis L. Drill, U. S. Dist. Atty., of St. Paul, Minn., and J. H. Fraine, Asst. U. S. Dist. Atty., of Minneapolis, Minn.

MOLYNEAUX, District Judge. This is an action on a war risk insurance policy. A jury was waived, and the case was submitted to the court upon the record of a former trial hereof and additional testimony taken at the present trial.

It appears from the evidence that the plaintiff was inducted into the active military service of the United States on July 25, 1918, and remained therein until November 8, 1919, at which time he was granted an honorable discharge. At the time of entering said service on July 25, 1918, the plaintiff applied for, and was by defendant granted, term insurance in the sum of $10,000, pursuant to the

Act of Congress approved October 6, 1917 (40 Stat. 398), commonly known as the War Risk Insurance Act. He paid the prescribed premiums thereon until November 30, 1919, and from that time on did not pay any premiums thereon until September 14, 1924.

On the last-named date, the plaintiff made written application according to law for reinstatement of $3,000 of his lapsed term insurance, and stated in said application that he was not then totally and permanently disabled, and with his said application he forwarded and tendered to the government a sum of money only sufficient to pay the premium on $3,000 term insurance which he sought to reinstate.

In compliance with his said application, and on proof therein submitted that he was not totally and permanently disabled, his term insurance was reinstated in the sum for which he applied, to wit, the amount of $3,000.

Thereafter, and on March 10, 1926, the plaintiff desiring to take advantage of the provisions of the law which permitted persons holding term insurance to convert the same into a different form of policy, containing provisions different from those in the term insurance policy, made application for a $3,000 converted policy of the class known as ordinary life policy; and thereafter there was, in compliance with said application, granted and issued to plaintiff, in accordance with law and regulation thereunder a converted policy numbered K–521789, which said policy contained a surrender value, a loan value, an extended insurance value, and other valuable provisions, none of which were in said term insurance policy.

Thereafter the plaintiff borrowed the sum of $88 on said policy from the defendant, and delivered said policy in pledge to the defendant as security for the sum so borrowed, which said sum is still owing by the plaintiff to the defendant, and said policy is still in the possession of the defendant under and pursuant to said pledge, as security for the repayment of said loan.

The plaintiff duly filed with the United States Veterans' Bureau his application for the payment to him of the claimed installments of his said war risk insurance, which was refused, and a disagreement exists, and did exist before the commencement of this action, between plaintiff and defendant as to plaintiff's right to the payment of such installments.

After carefully examining and considering the evidence, I hold that the plaintiff was totally and permanently disabled on the 8th day of November, 1919, the time of his discharge from the Army. The plaintiff is affected with pulmonary tuberculosis, and was so affected at the time of his discharge.

While plaintiff was in the early stages of the disease at the time he made his application for the reinstatement of his insurance. I am satisfied that it would have been reasonably dangerous to his hoped-for recovery for him to have engaged in any continuous work. He spent a great deal of his time in various government hospitals taking the rest, diet, fresh air cure in an effort to overcome the disease. His condition has been continuously getting worse. It is probably much easier to realize at this time that he was totally and permanently disabled at the time of his discharge and at the time he applied for a reinstatement of his insurance, than it was to do so at that time. No one could say at that time that he would or would not recover. Neither the patient nor the physicians, however skillful, could determine the course of the disease in advance or say that the plaintiff was totally and permanently disabled. I think, when the plaintiff stated in his application that he was not totally and permanently disabled, he so believed and so hoped. And those representing the government so believed and so hoped when his application for reinstatement was granted. Both parties acted in good faith, but were disappointed in the outcome of the disease and the failure of plaintiff to recover.

Under the provisions of the War Risk Insurance Act approved October 6, 1917, insurance was authorized to be granted by the United States to every commissioned officer and enlisted man when employed in active service under the War Department or Navy Department upon application therefor in any multiple of $500, and not less than $1,000 or more than $10,000 on payment of prescribed premiums charged therefor.

Under the provisions of the War Risk Insurance Act of October 6, 1917, it was provided that, during the period of war and thereafter until converted, the insurance granted under said act should be term insurance for successive terms of one year each, and that not later than five years after the date of termination of the war, as declared by the proclamation of the President of the United States, the term insurance should be converted, without medical examination, into such form or forms of insurance as might be prescribed by regulations and as the assured should request.

By the act of Congress approved August 9, 1921, it was authorized that theretofore lapsed or canceled yearly renewable term insurance might be reinstated on the application of the insured, provided that during his lifetime the applicant submitted proof satisfactory to the Director of the United States Veterans' Bureau that any disability from which he suffered was of service origin, and that the applicant was not totally and permanently disabled.

The defendant denies that the plaintiff was totally and permanently disabled at the time said original policy lapsed or at any other time, and pleads the subsequent proceedings and the reinstated insurance contract and converted policy in estoppel of plaintiff's claim on the original policy.

1. The plaintiff sues to recover $10,000, basing his cause of action upon his original contract for term insurance, ignoring his application for a reinstated policy and subsequent converted policy.

The reinstated policy superseded the original insurance contract between the plaintiff and the defendant, and the reinstated policy was in its turn superseded by the converted policy, thus doing away with the original contract, in so far as $3,000 of the amount of that policy is concerned, as long as the new contract stands. Stevens v. U. S. (C. C. A.) 29 F.(2d) 904 and U. S. v. Buzard (C. C. A.) 33 F.(2d) 883.

And, in the absence of fraud or mistake, the insured is estopped from recovering on the original lapsed contract, by the subsequent application for reinstatement and the granting thereof on the representation by the insured that he was not at the time of said application totally and permanently disabled. Stevens v. U. S., supra; U. S. v. Buzard, supra.

I set aside the difficulty encountered in the pleadings, and the form of this action, which is based upon the original contract without setting up the two subsequent contracts and asking for the cancellation thereof, and proceed to a consideration of the plaintiff's allegations in his reply to the effect that the two subsequent contracts were entered into by the parties by their mutual mistake.

Mr. Pomeroy says in his work upon Equity Jurisprudence (Pomeroy's Equity Jurisprudence [4th Ed.] vol. 2, § 855, p. 1745):

"When parties have entered into a contract or arrangement based upon uncertain or contingent events, purposely, as a compromise of doubtful claims arising from them, and where parties have knowingly entered into a speculative contract or transaction—one in which they intentionally speculated as to the result—and there is in either case an absence of bad faith, violation of confidence, misrepresentation, concealment, and other inequitable conduct, * * * if the facts upon such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected, this error, miscalculation or disappointment although relating to matters of fact and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief, either by way of canceling the contract and rescinding the transaction, or a defense to a suit brought for its enforcement. In such class of agreements and transactions the parties are supposed to calculate the chances and they certainly assume the risks, where there is no element of bad faith, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual fraud."

The ultimate fact, total disability, was not known to the parties when the new contract was entered into, and, from the nature of the disease and at its then stage of progress, could not be known from any ascertainable facts or otherwise; that was beyond the ken of human skill. And each of the parties must have known of the uncertainty of the ultimate outcome of the case. Acting in this state of uncertainty, their minds met in taking a chance, and, entering into a new contract based on the fact, thus resolved, that the insured was not then totally and permanently disabled.

The burden was upon the plaintiff to establish to the satisfaction of the Chief of the Veterans' Bureau that he was not totally and permanently disabled; he furnished proof of that condition, and, the government having accepted it, the parties are bound by their contract, and estopped to deny the truth of such accepted basic fact upon which the contract is founded. To do so would open up a fruitful field of litigation and lead to much injustice. Stevens v. U. S. (C. C. A.) 29 F.(2d) 904; and U. S. v. Buzard (C. C. A.) 33 F.(2d) 883.

2. The foregoing considerations do not apply to the $7,000 balance on the original policy, which was not reinstated. The government was not misled or in any wise prejudiced in regard to that part of the case, and the plaintiff is entitled, under the facts as here found, to recover on that part of his claim. U. S. v. Buzard, supra.

My conclusion is that the plaintiff is not entitled to recover in this action from the defendant as to the $3,000 which was reinstated and converted, and is entitled as to the $7,000 which was not reinstated.

I further find that 10 per cent. of the amount found due from defendant to plaintiff is a reasonable attorneys' fee to be allowed herein.

Let a proper form of judgment, in accordance with decision, be drawn and submitted to the court for its signature.