**UNITED STATES v. ARZNER.**
**No. 6643.**

Circuit Court of Appeals, Ninth Circuit.
April 4, 1932.

Anthony Savage, U. S. Atty., Tom De Wolfe, Asst. U. S. Atty., and Lester E. Pope, Ins. Atty., U. S. Veterans' Administration, all of Seattle, Wash., for the United States.

Chadwick & Chadwick, of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

During the life of a $10,000 war risk insurance policy the insured, Clarence P. Arzner, appellee, was totally and permanently disabled. Premiums were paid therefor until January, 1919. On March 1, 1920, the insured reinstated and converted his insurance to an ordinary life contract upon which he paid the premiums. On February 28, 1921, plaintiff requested that this policy be reduced to $5,000, and that he be paid the cash surrender value for the $5,000 insurance which he discontinued. In pursuance of this request he was paid $45.20, representing the cash surrender value of the $5,000 insurance surrendered by him at that time. Thereafter he surrendered the balance of $5,000 and was paid the cash surrender value thereof ($18.30). It is contended by the government on this appeal that, inasmuch as the insured had surrendered his reinstated insurance for the cash surrender value thereof, he could not take advantage of the act of Congress of July 3, 1930, amending section 307 of the World War Veterans' Act so as to permit a holder of subsequent veterans' insurance policies to sue upon an original contract. The reason advanced is that the veteran, having elected to surrender his subsequent policies for the cash surrender value, was not in a position to surrender his subsequent contract or policy as required by the amendment to section 307 of July 3, 1930. That amendment is as follows: " * * * Provided, That the insured under such contract or policy [all contracts or policies of insurance heretofore or hereafter issued] may, without prejudicing his rights, elect to make claim to the bureau or to bring suit under section 445 of this title on any prior contract or policy, and if found entitled thereto, shall, upon surrender of any subsequent contract or policy, be entitled to payments under the prior contract or policy: Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts or policies of insurance." 38 USCA § 518.

The purpose of this amendment was to meet the situation that had arisen by reason of numerous holdings of the courts to the effect that the subsequent veterans' insurance policies were novations, and that, thereafter, recovery could not be had upon the original insurance and that the ordinary principles of contract applied to the veterans' policies. Stevens v. U. S. (C. C. A.) 29 F.(2d) 904; United States v. Buzard (C. C. A.) 33 F.(2d) 883; United States v. Kusnierz (C. C. A.) 33 F.(2d) 887; United States v. Allen (C. C. A.) 33 F.(2d) 888; United States v. Cross (C. C. A.) 33 F.(2d) 887; United States v. Barker (C. C. A.) 36 F.(2d) 556; United States v. Andrews (C. C. A.) 43 F.(2d) 80; United States v. Crowell (C. C. A.) 48 F. (2d) 475. The obvious purpose of the amendment was to permit the veteran to present to a court and jury his claim that he was totally and permanently disabled during the life of his war risk insurance policy and to provide that if his contention was sustained by the court and jury he should recover under the terms of the original contract notwithstanding the fact that in the subsequent dealings with the Veterans' Bureau he had accepted some form of insurance in lieu of the original war risk insurance. By this legislation he was not required to jeopardize his rights under the subsequent contracts or policies in order to present his claim under the superseded war risk insurance. He could completely ignore the subsequent policies. They constituted no defense. If the judgment was in his favor in his suit on the original policy, however, he was required to surrender any subsequent contract or policy before he was entitled to payment under the prior contract or policy.

These provisions in favor of the veteran were very liberal and definitely and purposely abrogated the rules relating to civil contracts ordinarily applicable to insurance policies. By this legislation the government not only waived its immunity from suit, but also waived the defenses which might have been advanced by an insurance company. This was in the interest of justice, for where the right of the veteran under his original policy had accrued by reason of his permanent and total disability, he was entitled to a monthly payment of $57.50, and there was no reason why, under those conditions, he should be paying premiums upon a policy which entitled him to a payment of that amount if and when he became, as he in fact then was, permanently and totally disabled. The government admits all this, but claims that the veteran, by voluntarily surrendering the subsequent policies and accepting their cash surrender value, has put himself in a position where he cannot take advantage of the statute of July 3, 1930, supra, for the reason that he cannot surrender his subsequent contract because he has already done

so, and received a cash consideration therefor. This view has been sustained by the Circuit Court of Appeals for the Tenth Circuit in United States v. Andrews, 43 F. (2d) 80.

We are unable to agree to the conclusion reached by the Circuit Court of Appeals of the Tenth circuit. We think that the insured, in the case at bar, comes under both the letter and the spirit of the Act of July 3, 1930. While that act authorizes the veteran to retain his rights under the subsequent contract notwithstanding he is making a claim on the original and superseded insurance, it requires a surrender of the subsequent contract as a condition precedent not to the recovery of a judgment in his action upon the first policy, but as a condition to receiving the payments adjudicated in his favor by that judgment. If he has already surrendered the policy, there is no occasion to surrender it after the judgment, nor is it possible to do so. The fact that he has surrendered it for a paltry consideration which represents the return to him of a portion of the premium which he should never have been required to pay in the first place does not change the fact that he comes within the letter of the statute in that he has surrendered the subsequent policies. That he comes within the spirit of the remedial legislation of July 3, 1930, supra, seems too clear for discussion. Under the situation, the insured has been paying the government, where, upon the facts as found by the jury, the government should have been paying him. It was such conditions that Congress intended to remedy by the legislation.

Furthermore, if there is anything in the surrender of the subsequent policies by the insured which differentiates it from the surrender required to be made by Congress in the amendment of July 3, 1930, supra, it lies in the fact that the surrender was for a cash consideration. The return of that consideration should and would have the same effect as the surrender of the subsequent policies. It is all the veteran can surrender under the circumstances. It is suggested that the government should at least have remitted from the amount of the judgment the amount thus paid to the veteran as the cash surrender value of the subsequent policies. While this claim is not strongly pressed, upon reflection we are satisfied that it is not tenable. It is the purpose of Congress to permit the veteran to ignore the subsequent policies of insurance in maintaining his rights under the original policy. By the verdict of the jury, and the judgment of the court, it has been determined that he never should have been required to pay the premiums upon the subsequent insurance policies. In this view of the case the balance is in favor of the veteran rather than the government upon the subsequent policies, that is to say, the premiums he paid are greater than the amount returned to him by way of cash surrender value.

Furthermore, we think the claim of the government set up by way of an affirmative defense alleging the transactions which occurred under and in pursuance of the subsequent policies to be irrelevant to the issues presented to the trial court in the suit upon the original war risk insurance policies. It is the intention of Congress that such suit should be unembarrassed by subsequent transactions between the veteran and the government with relation to renewal or substituted policies. The provisions with reference to the surrender of the subsequent policies relate not to the procurement of a judgment, but to the right of the insured to payment thereunder. We think the phrase in the amendment of July 3, 1930, supra, "may, without prejudicing his rights, elect to make claim to the bureau or to bring suit under section 445 of this title on any prior contract or policy, and if found entitled thereto" contemplates a suit upon the original policy unembarrassed by any subsequent transactions with the government upon "any subsequent contract or policy," and that the provision of the amended section with regard to the surrender of the subsequent contract is a condition subsequent which must be complied with in order to secure payment from the Veterans' Bureau of the installments provided for in the judgment. The application for and the acceptance of such cash surrender payments in the light of the law would no doubt be effective to surrender any rights which the veteran might have under these subsequent contracts of insurance. The actual physical surrender of the documents and formal assent to such surrender would no doubt be desirable and might well be insisted upon as a condition of payment. In any event, it is sufficient to say and to hold that the affirmative defense interposed by the government in the case at bar is not germane to the veteran's cause of action. This view is in accord with our decision in Herrig v. U. S., 53 F. (2d) 327, 328, where this court, speaking through Judge Sawtelle, said: "We believe that, under a recent statute, the defense of estoppel by virtue of reduced, converted, or reinstated policies is not open to the government, and therefore the equitable matter

set up by the plaintiff-appellant in reply to such defense, and the court's decree thereon, were of no legal effect, and constitute a futile and unnecessary gesture. That being so, the action at law on the original policy of insurance, which action was triable only before a jury, was the only cause that could be properly and was adjudicated in the court below. As to this cause, the jury found for the defendant, judgment was rendered on the verdict, and there is no reason why such verdict and judgment should be disturbed by this court."

To the same effect is the decision of the Circuit Court of Appeals of the Fifth circuit in Sprencel v. United States, 47 F.(2d) 501, 504. Speaking of this remedial legislation of July 3, 1930, supra, the court said:

"If a recovery is had on the old policy or contract, then before receiving payment under such a judgment, the insured is required to surrender any subsequent agreement. In other words, it seems to permit him to elect whether he will claim upon the original policy 'without prejudicing his rights' and submit the issues of fact and law as to whether he is entitled to recover thereunder, notwithstanding any subsequent contract or policy. Since it is our conclusion that the lower court erred (for reasons which later hereinafter appear) in directing a verdict and will reverse the case for a new trial, we think it well to say that this statute will hereafter exclude from the litigation any question of estoppel based upon the application for reinstatement and the alleged contract arising therefrom.

"Accordingly, we hold in the present suit that, as in the Sprencel Case, supra, the question of estoppel raised by the government should have been 'excluded from the litigation.' This being so, the equitable matter set up by the plaintiff in its reply presented no issue properly cognizable by the court below, and the decree entered upon such issue is of no legal effect."

Inasmuch, however, as the appellee has not claimed, either in the court below nor in this court, that the defense is irrelevant, we have passed upon the merits of the issue presented to us, namely, whether or not the surrender of the subsequent policies for the cash surrender value thereof, precludes the veteran from receiving the payments provided for in the original war risk insurance policy in the event that he became totally and permanently disabled during the life of the policy.

Judgment affirmed.