## UNITED STATES v. KANE.
### No. 7135.

Circuit Court of Appeals, Ninth Circuit.

April 13, 1934.

Anthony Savage, U. S. Atty., Tom De Wolfe, Asst. U. S. Atty., and Lester E. Pope, Chief Atty., U. S. Veterans' Administration, all of Seattle, Wash., for the United States.

Russell H. Fluent, of Seattle, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

Appeal from judgment in favor of plaintiff in action to recover on policy of war risk insurance. The action was instituted by Sam B. Kane, the insured. At the conclusion of plaintiff's case the government moved for a nonsuit, on the ground that the plaintiff had not made out a prima facie case and that there was no substantial evidence of total and permanent disability during the life of the

policy. The motion was denied. After both sides had rested the government moved for a directed verdict on the same grounds as the prior motion, and the same ruling had. The verdict of the jury was in favor of plaintiff. The sole question involved is whether the evidence presented was of a character substantial enough to warrant submission to the jury.

■ At the outset, it might be well to allude to another point raised by appellant, that of reinstatement and conversion of the sum of $2,000 of plaintiff's original $5,000 policy. Kane converted $2,000 of the original $5,000 policy into a thirty-year endowment policy, effective June 1, 1920, with the premiums paid to include the month of July, 1921. On the remaining $3,000 carried as term insurance, the premiums were paid to include August, 1921. The converted policy was surrendered as of August 1, 1921, and the insured was paid the cash surrender value, $41.08. Appellant concedes that the case of U. S. v. Arzner (C. C. A.) 57 F.(2d) 488, 490, which holds that "it is the purpose of Congress to permit the veteran to ignore the subsequent policies of insurance in maintaining his rights under the original policy," is controlling on the point, and, obviously, no further discussion is necessary.

Appellee was stricken by pneumonia shortly after entering the Army in 1917 and was hospitalized for from three to four months. During an engagement in France he was severely gassed, rendering hospital care necessary for a period of two months. Within a month after discharge from the Army he was forced to give up one job after working for less than a week, and place himself under care of a physician. The subsequent history of the case is replete with efforts to work, visits to doctors, operations, and sojourns in hospitals. He has been afflicted with defective eyesight and hearing, sinus trouble, and active pulmonary tuberculosis, spending years in hospitals attempting to arrest the progress of the disease. He complains of headache, nervousness, and frequent colds.

■ Three expert witnesses testified for the plaintiff, each as to his present disability, and two of the medical men answered, "Yes," to the hypothetical question of whether or not the insured was totally and permanently disabled on June 3, 1919. The answer of the third expert to a similar question was stricken because the answer was based upon an examination of the plaintiff, made in March of 1929, and not upon the hypothetical question.

"The term 'total and permanent disability' obviously does not mean that there must be proof of absolute incapacity to do any work at all." U. S. v. Sligh (C. C. A.) 31 F.(2d) 735, 736.

And—"The mere fact that a claimant may have worked for substantial periods during the time when he claims to have been permanently and totally disabled is not conclusive against him. The question is not whether he worked, but whether he was able to work, i. e., whether he was able to follow continuously some substantially gainful occupation without material injury to his health." Carter v. U. S. (C. C. A.) 49 F.(2d) 221, 223.

See U. S. v. Godfrey (C. C. A.) 47 F.(2d) 126.

It was said in U. S. v. Rasar (C. C. A.) 45 F.(2d) 545, 547: "In United States v. Eliasson, 20 F.(2d) 821, 824, this court held that total disability does not necessarily imply incapacity to do any work at all, and in the course of the opinion it was pointed out that the work which the insured had performed 'was intermittent and was continued only for brief periods, and invariably resulted in relapses which totally unfitted him for work.' It was held that such unsuccessful efforts to work did not rebut an inference of total disability."

■ In the instant case plaintiff was unable to continually and regularly carry on even very light kinds of work. He tried to work as an attendant in a smelter, which employment consisted of watching anodes and cathodes to prevent overheating in electrolysis. Later he worked as a night watchman, punching a clock on rounds made every two hours and sitting in an office between rounds. Certainly no simpler or easier task could have been secured. The evidence discloses that he was unable to perform even this work without injury to his health. After he was forced to give up the employment, he applied for vocational training and his efforts in training as a grocery clerk sent him to the hospital.

The insured spent two successive years in hospitals undergoing treatment for tuberculosis, being released from the hospital with the rating: "Arrested tbc." This release from the hospital was evidence for the consideration of the jury, but it does not necessarily overcome the other evidence of total and permanent disability.

The plaintiff's case met the legal requirement imposed by law.

" * * * A disability is permanent 'whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the per-

son suffering from it'; and where there is substantial evidence of such conditions, it is for the jury to say whether or not the disability in fact exists. Of course, not every case of tuberculosis constitutes a permanent disability; but where a case has continued as long as has that of the plaintiff here and has been attended with as many distressing symptoms, a reasonable man might well conclude that it would continue throughout the life of the insured." Carter v. U. S. (C. C. A.) 49 F.(2d) 221, 223.

The evidence presented required the submission of the case to the jury. The trial court did not err in denying the motions for nonsuit and for directed verdict.

Judgment affirmed.