### DRUMMOND v. MUTUAL LIFE INS. CO. OF NEW YORK.

#### No. 12348.

District Court, E. D. Missouri, E. D.

July 17, 1939.

Leahy, Walther, Hecker & Ely, of St. Louis, Mo., for plaintiff.

Jones, Hocker, Gladney & Grand and Web A. Welker, all of St. Louis, Mo., for defendant.

MOORE, District Judge.

The plaintiff, Virginia M. Drummond, was at the time she filed this suit, and at all times since has been, a citizen and resident of the State of Missouri. The defendant, the Mutual Life Insurance Company of New York, is a corporation incorporated under and by virtue of the laws of the State of New York, and was at the commencement of this action, and at all times since has been, a citizen and resident of the State of New York, and not a citizen or resident of the State of Missouri. The amount in dispute exceeds the sum of $3,000.

On or about the 16th day of July, 1927, the defendant issued to plaintiff herein a policy of life insurance, No. 3,840,508. Said policy was issued in consideration of the payment of an annual premium of $107.80, the first premium being payable on the date of said policy, and all subsequent premiums payable on the 16th day of July of each year thereafter; $5 of said total amount was the premium designated for the double indemnity benefit provided for in said policy, and $14.50 of said total sum was the premium for disability benefits provided in said policy. A grace period of thirty-one days was allowed by the terms of the policy for the payment of premiums. At the time the application for said policy

was made, plaintiff was a citizen and resident of East St. Louis, Illinois; said application was made to defendant agent in the State of Illinois, and the policy issued on said application was delivered to plaintiff in the State of Illinois.

Section 3 of said Policy provided benefits in the event the insured should suffer total and permanent disability before attaining the age of sixty years. Said provision is as follows:

"Total Disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation.

"Permanent Disability.—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the Insured; or,

"(b) If such disability has existed continuously for ninety days.

"When Benefits become Effective.—If, before attaining the age of sixty years and while no premium on this Policy is in default, the Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining lifetime of the Insured so long as such disability continues.

"Benefits. (a) Increasing Income.— The Company will pay a monthly income to the Insured of the amount stated on the first page hereof ($10 per $1,000 face amount of Policy), beginning upon receipt of due proof of such disability and increasing after sixty consecutive monthly payments have been made to one and one-half times such amount and after sixty further consecutive monthly payments have been made to twice such amount at which it shall remain while total and permanent disability continues.

"(b) Waiver of Premium.—The Company will also, after receipt of such due proof, waive payment of such premium as it thereafter becomes due during such disability.

"Specified Disabilities.—The entire and irrecoverable loss of the sight of both eyes, or of the use of both hands or both feet or one hand and one foot, will be considered total and permanent disability.

"General Provisions.—The Company may, before making any income payment or waiving any premium, require due proof of the continuance of total and permanent disability, but such proof shall not be required oftener than once a year after such disability has continued for two years. If such proof is not furnished on demand or if it shall appear to the Company that the Insured is no longer totally and permanently disabled, no further income payments will be made or premiums waived.

"Neither the dividends nor the amount payable in any settlement hereof shall be decreased because of Disability Benefits granted.

"If the Insured shall at any time so recover that the payment of Disability Benefits terminates and later shall furnish due proof that he has again become totally and permanently disabled, Disability Benefits shall be the same in amount and subject to the same conditions as if no prior disability has existed.

"If the disability of the Insured shall be the result of insanity, income payments shall be payable to the beneficiary, if any, instead of to the Insured.

"Any disability income payment which may become payable and which is unpaid at the death of the Insured shall be paid to the beneficiary.

"Disability Benefits shall not be granted if disability is the result of self-inflicted injury.

"The provision for Disability Benefits shall automatically terminate if the Insured shall at any time, voluntarily or involuntarily, engage in military or naval service in time of war outside of the continental limits of the United States of America and the Dominion of Canada.

"If requested in writing by the Insured, the Company will terminate the provision for Disability Benefits by endorsement on this policy.

"If the Insured attains the age of sixty years or if the provision for Disability Benefits terminates, the premiums payable after such age or such termination shall be reduced by the premium for such benefits."

The provisions of Section 3 are modified by a supplementary benefit provision printed on the back of said policy, which is in words and figures as follows:

"Supplementary Benefits to Section Entitled 'Benefits in Event of Total and Permanent Disability before Age 60.'

296

"Benefits if Proof Delayed and No Premium in Default.—If, while no premium is in default, the proof furnished the Company under the section providing for 'Benefits in Event of Total and Permanent Disability before Age 60' is such as to entitle the Insured to the Disability Benefits provided for therein, and if due proof is also furnished the Company that such disability has been continuous since its beginning the Company will:

"(a) Begin the monthly income payments provided for in such section as of the end of the first completed month of such disability if earlier than the date of receipt of such proof instead of as of the date of receipt of such proof, and

"(b) Return any premium due after the beginning of such disability which has been paid during the continuance thereof.

"Benefits if Premium in Default not over Six Months.—If, not later than six months after the due date of any premium in default and provided no previously due premium is also in default, due proof is received by the Company that the Insured was totally and permanently disabled, as defined in the section entitled 'Benefits in Event of Total and Permanent Disability before Age 60', at the date when such premium in default fell due, and has been continuously so disabled since said due date, the Policy will be reinstated without evidence of insurability and the waiver of premium and disability income benefits shall be the same as if such default had not occurred."

The above mentioned premiums on said policy were paid annually as they became due up to and including the annual premium due July 16, 1932, the payment of which carried the policy to the next premium date, to-wit, July 16, 1933, with a grace period of thirty-one days thereafter within which to pay same.

On February 10, 1933, the insured suffered a nervous breakdown, which her physicians have diagnosed as psycho-neurosis. At that time insured was attending St. Louis University, where she was studying for a master's degree. She was treated at that time by Dr. Broun, a specialist in internal medicine. He found her highly nervous and that she often had crying spells and had difficulty in carrying on her school work. She had fear reactions and difficulty in getting along with people. As a part of his treatment, Dr. Broun at first suggested rest from study, then advised her to continue with her school work. Upon this advice insured attempted to carry on her school work, beginning the early part of March, 1933.

As a part of her studies insured was enrolled in the Social Service Department at Desloge Hospital in the City of St. Louis, and it was to this work that she returned following her breakdown on February 10, 1933. However, I find that from the time of her resumption of her studies until she abandoned them some time in June following insured was unable to perform substantially the duties incident to her studies. During that time insured carried on her work irregularly. She was irresponsible and often failed to report for duty, failing to notify her superior when she would be absent.

I find that during this time that although insured was instructed regarding routine tasks, she failed to do them as instructed; that she did not co-operate with others in the hospital; that the case records which it was her duty to keep were unsatisfactory in that she omitted points she had been instructed to cover and that she could not do simple tasks outside of the classroom. I further find that during this period insured was given to crying spells daily and that she could not get along with the other students. She did not mix with them, but kept aloof from them, preferring to be alone. Dr. Broun, her physician, finally advised her to discontinue her studies, which she did in June, 1933. Thereafter Dr. Broun sent her to Dr. McFadden, a specialist in nervous and mental diseases, who began treating her September 2, 1933. Dr. McFadden found that insured was suffering from psycho-neurosis and unable to follow any gainful occupation. This diagnosis and opinion was concurred in by Dr. Kubischeck, a specialist in nervous and mental diseases, who began treating the insured in November, 1937. I find from all the evidence that insured has been since February 10, 1933, to the date of the filing of the petition in this case totally and permanently disabled within the meaning of Section 3 of the policy hereinbefore mentioned in that during said time she suffered impairment of mind and body which continuously rendered it impossible for her to follow a gainful occupation and that her total disability had existed continuously for ninety days. I find that although she attempted to resume her studies from March until

June, 1933, she did so at great sacrifice to her health and comfort and that during said time she was unable to do all the substantial and material acts necessary to the prosecution of insured's duties as a student, in the customary and usual manner.

When the annual premium on insured's policy became due on July 16, 1933, insured was financially unable to pay same. Insured's mother, acting for insured, thereupon consulted with Mr. Menges, the defendant's District Manager, and advised him of insured's inability to pay the premium due, and he advised her to reduce the policy from $5,000 face amount to $1,000 face amount, which would reduce the annual premium to a figure which insured could meet.

Plaintiff thereafter, on August 14, 1933, just two days prior to the expiration of the grace period, allowed for the payment of the premium then due, signed an application for a reduction of the policy as suggested by defendant's agent, which application was prepared at the company's office.

At the time of the reduction of the policy, plaintiff received the cash surrender value allocated to $4,000 of the life portion of the policy, amounting to $126.64, and used part of it to pay the premium on the policy in the reduced amount. Thereafter insured paid a like sum for the premium due July 16, 1934, July 16, 1935, and July 16, 1936.

The indorsement made on the policy was as follows:

"Reduction of face amount of policy: —It is understood and agreed that commencing the 16th day of July, 1933, the face amount of this policy is reduced from * * * Five Thousand * * * Dollars to * * * One Thousand Dollars * * * and that the amounts of any and all other pecuniary benefits accruing under this policy are reduced in like proportions; and that from said date the premium due on this policy is changed to Twenty-one Dollars and Fifty-Six Cents falling due—annually on the 16th day of July, in each year."

I further find that it was not until the early part of 1937 that insured learned that her policy contained a disability provision. Thereafter, on April 9, 1937, insured filed proof of claim with the defendant. At that time there was no premium in default on said policy.

Defendant investigated insured's claim and determined that insured was totally and permanently disabled within the meaning of the policy, but fixed the date of the beginning of her disability as of July 30, 1933, instead of February 10, 1933, the date which I find under the evidence to be the date of the onset of her condition, and allowed plaintiff's claim for disability benefits in the sum of $10 per month beginning August 30, 1933, plus a return premium paid by the insured beginning with the premium paid July 16, 1934.

The Court concludes as a matter of law: That there is an actual controversy between the plaintiff and the defendant within the meaning of the Missouri Declaratory Judgment Act (Mo.St.Ann. § 1097a et seq., p. 1388).

Plaintiff's present claim under the policy for total and permanent disability benefits is not affected by the reduction in July, 1933, of the face amount of the policy from $5,000 to $1,000, which reduced the total and permanent disability benefits accordingly, for the reason that plaintiff's claim accrued prior to said reduction.

Plaintiff is entitled to total and permanent disability benefits beginning as of March 10, 1933, the end of the first completed month of plaintiff's total and permanent disability, to continue during the remaining lifetime of the insured so long as such total and permanent disability continues, said amount to be in the sum of $50 per month for the first sixty consecutive months of said total and permanent disability; thereafter in the sum of $75 per month for the next consecutive sixty months of total and permanent disability and thereafter in the sum of $100 per month during the remaining lifetime of the insured so long as such total and permanent disability continues.

Defendant in making payment to plaintiff of her claim in accordance with the method set forth in Paragraph II is entitled to deduct whatever sums it has paid plaintiff.

Plaintiff is entitled to a waiver of premium on the policy in its reduced amount so long as she remains totally and permanently disabled.