**UNITED STATES v. GARLAND et al.**
No. 4788.

Circuit Court of Appeals, Fourth Circuit.
July 21, 1941.

Writ of Certiorari Denied Nov. 10, 1941.

See 62 S.Ct. 189, 86 L.Ed. ——.

Wilbur C. Pickett, Sp. Asst. to Atty. Gen. (Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., Sterling Hutcheson, U. S. Atty., of Richmond, Va., and Russell T. Bradford, Asst. U. S. Atty., of Norfolk, Va., on the brief), for appellant.

Robert C. Duval, Jr., of Richmond, Va. (Duval & Duval, of Richmond, Va., on the brief), for appellees.

Before SOPER, DOBIE and NORTHCUTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal filed by the United States of America (hereinafter called appellant) from a judgment of the United States District Court for the Eastern District of Virginia granting to a claimant's trustee monthly disability-benefit payments on a United States Government life insurance policy.

Gregory Gray Garland entered into the service of the United States Army on December 23, 1917, and was honorably discharged as a captain on December 15, 1918. On April 11, 1918, he made application for, and was granted, a policy of war-risk term insurance to the amount of $10,000. Premiums were paid on this policy until October 1, 1923, when Garland converted his war-risk term insurance into a $10,000 twenty-payment life policy issued by appellant.

This second life insurance policy provided for payment to the insured of $57.50 per month upon receipt in the Veterans' Administration of due proof that he had become totally and permanently disabled while the policy was in force, subject to the single restriction that retroactive payment of the disability benefits would be limited to a period not exceeding six months prior to receipt of due proof of such disability. There were also provisions in the policy for (a) a surrender of the policy in exchange for a "cash-surrender value"; (b) a surrender of the policy in exchange for the issuance of "paid-up insurance"; (c) upon default in payment of premiums, and if the policy had not been surrendered for a cash value or for paid-up insurance, the automatic issuance of "extended insurance"; and (d) the execution of "policy loans". Accompanied by a table of cash-surrender values from which the value of an insured's policy could be readily computed as of any specific date, the "cash-surrender" provision read: "Upon written request therefor by the Insured made while this policy is in force * * *, and upon complete surrender of this policy with all claims thereunder, the United States will pay to the Insured the cash-surrender value hereof. * * *"

Garland had paid premiums on the second life insurance policy through the month of February, 1933. Prior to this time, he had made no claim for disability benefits and had not submitted any proof, or even notice, of disability to the Veterans' Administration. On February 27, 1933, he executed and transmitted to the Veterans' Administration an application for the cash-surrender value of his policy. The application stated in part: "I hereby surrender my policy, K-422,221, with all claims thereunder, for the purpose of obtaining the cash-surrender value, such surrender to be effective in accordance with the rules and regulations of the Veterans' Administration, and I direct that the proceeds * * * be paid to me in cash * * *."

The insurance policy and this application were both transmitted to the Veterans' Administration. As Garland had previously borrowed $1,985 against the reserve of his policy, the Veterans' Administration paid him on March 13, 1933, the remaining cash-surrender value of $126.80.

On January 2, 1936, almost three years after the execution of the cash-surrender agreement, Garland filed a claim in the Veterans' Administration asserting that he had become totally and permanently disabled prior to February 27, 1933, and demanding disability benefits under the previously surrendered policy. The Insurance Claims Council of the Veterans' Administration denied the claim on March 12, 1936. On December 7, 1936, Garland personally ap-

pealed from this decision to the Board of Veterans' Appeals. The final decision of the Board of Veterans' Appeals, rendered on September 12, 1938, affirmed the decision of the Insurance Claims Council.

Inasmuch as Garland later became clearly incompetent, the instant action was filed by his mother and trustee, Lula W. Garland (hereinafter called appellee). Camilla Wellford Garland, the wife of the insured and the beneficiary under the policy, was permitted to intervene in this action as a party plaintiff to protect her interests.

In the court below, the appellant took the position (1) that Garland had not become totally permanently disabled on, or prior to, February 27, 1933; and (2) that, at all events, the surrender of the policy on February 27, 1933, was a complete fulfillment of the insurance contract and was thus a bar to the present claim. Appellant moved for a directed verdict at the completion of appellee's evidence and, again, at the completion of all the evidence. Both motions were overruled. Over the objection of appellant, the District Judge then submitted the following four questions to the jury:

"No. 1: Was the veteran, Gregory Gray Garland, totally and permanently disabled on the 27th day of February, 1933, the date on which he surrendered and released his contract of insurance?"

"No. 2: Did Garland surrender and release his contract of insurance when he was totally and permanently disabled under the mistaken belief that no such disability then existed?"

"No. 3: Did the defendant accept the surrender and release of Garland's said contract of insurance when he was totally and permanently disabled under the mistaken belief on the part of the defendant that no such disability then existed?"

"No. 4: Was the said Garland on the 27th day of February, 1933, the date on which he surrendered and released his contract of insurance, mentally competent to execute a binding contract surrendering and releasing his said contract of insurance?"

When the jury answered all four questions in the affirmative, appellant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial.

These motions were also overruled; and a judgment was duly entered rescinding the cancellation of the second insurance contract under its surrender for the cash-surrender value, and granting to the appellee the cash sum of $2,745.54 (representing the aggregate amount of monthly payments then due), with the further provision for subsequent monthly payments of $43.58.

Appellant maintains on this appeal that the surrender of the second policy on February 27, 1933, was not based upon mutual mistake and that, accordingly, the surrender operated as a complete and absolute fulfillment of the insurance contract. Appellant further maintains that the District Judge erred in submitting to the jury the "equitable issue" of mutual mistake; that, in the light of appellant's specific objection to the submission of this issue to the jury, the District Judge should have made a finding of fact on the "equitable issue". Appellee, on the other hand, takes the position that the insurance policy matured at the very moment of Garland's total permanent disability, which occurred prior to February 27, 1933; that the subsequent cash-surrender agreement was, therefore, based upon a mutual mistake both as to Garland's then physical condition and as to his matured rights under the insurance contract. Appellee also asserts that the failure of the District Judge to make findings of fact on the issue of mutual mistake is not a ground for reversal.

Under the benefit-payment provisions of Government war-risk and life insurance policies, it seems clear that the insured secures a matured claim at the moment of total and permanent disability. Proof of disability may be a condition precedent to an insurer's liability under certain types of insurance policies[1]; but, under the terms of the Government policies, proof of disability is merely a procedural step in the course of securing the benefit-payments. See Boyett v. United States, 5 Cir., 1936, 86 F.2d 66, 68; cf. Gambill v. United States, 10 Cir., 1939, 102 F.2d 667, 674. In Boyett v. United States, supra [86 F.2d 68], Judge Sibley carefully considered the terms of a converted Government policy and stated: "The fair construction is that hitherto followed that the death or disability must happen while the policy is in

---

[1] See the discussion of the two types of policies by Judge Sanborn in Mutual Life Ins. Co. v. Drummond, 8 Cir., 1940, 111 F.2d 282, 285, affirming, D.C.E.D.Mo. 1939, 28 F.Supp. 294. Compare Lincoln Nat. Life Ins. Co. v. Ghio, 8 Cir., 1940, 111 F.2d 307, with Mutual Life Ins. Co. v. Heilbronner, 8 Cir., 1941, 116 F.2d 855.

force, but the proof of it may be made in a reasonable time afterwards. Disability or death during the life of the policy is a condition of liability, but proof of it at some later time is only a prerequisite of payment. Payment waits on due proof, but matured obligation to pay does not."

Nevertheless, the mere analytical consideration of the isolated concept of a right as "accrued", "matured", or "vested" does not shed very helpful light on the instant problem. We are here dealing with a realistic, everyday transaction involving, particularly, the exercise of the "cash-surrender" privilege of an insurance contract. To state that the exercise of such privilege may now be set aside because of the alleged mutual mistake of the parties, is both to ignore the very nature and purpose of the cash-surrender clause of the policy and to overlook the obviously manifested intention of the interested parties.

When, on October 1, 1923, Garland converted his war-risk policy into a twenty-payment life insurance policy, he entered into a contract which included, as an additional privilege for him, the cash-surrender clause. By that clause, the insurer extended to the insured an unconditional and continuing offer, an option, to the effect that upon the giving of due notice, the insured might terminate the insurance contract at any time, under any circumstances, in exchange for the cash-surrender value, i. e., "the reserve, together with any dividend accumulations left on deposit, less any indebtedness under this policy." Cf. Lipman v. Equitable Life Assur. Soc., 4 Cir., 1932, 58 F.2d 15, 18; Pacific States Life Ins. Co. v. Bryce, 10 Cir., 1933, 67 F.2d 710, 712, 91 A.L.R. 1446. It was further stipulated in the policy that the exercise of this option was conditioned upon the complete and absolute surrender of the policy and of all claims whatsoever arising thereunder.

We are of the opinion that when Garland took advantage of the cash-surrender provision, and the jury found that he was competent at that particular time, he thereby subjected himself to the terms and conditions of both the policy and the application for the cash-surrender value. Appellant had extended a continuing offer in 1923 to pay the insured the cash-surrender value at any time that the insured saw fit to terminate the insurance contract and to abandon all claims therefrom arising. This offer was not conditioned upon, and made no reference to, any claim of total and permanent disability; but, irrespective of any specific claim, it was included in the contract as a means of complete and final cash adjustment. If an insured felt that he had a bona fide claim for disability benefits under the policy, he could either pursue this claim to a final conclusion or he could waive this claim by accepting the policy's cash-surrender value. The extreme situation readily suggests itself of an insured, hopelessly disabled and practically certain to die in the very near future, who might well desire a lump-sum settlement, in the form of the cash-surrender value, in preference to comparatively small monthly payments for the short span of life that was left to him. Certainly, under such a set of facts, the insurer would be absolutely bound by the insured's exercise of the cash-surrender option.

Appellant, in fact, had no interest in Garland's physical condition at the time of the surrender of the policy. If, prior to such a surrender, an insured had been found by the Administrator of Veterans' Affairs to have become totally permanently disabled, and if the policy had then been surrendered in mutual ignorance of this finding, a rescission of the cash-surrender agreement might seem to be justified. In such situation, there would have been a mutual mistake as to the basic assumption of the parties: they would have considered that the insured was surrendering the right to make an uncertain claim, whereas the insured would have been actually surrendering an established right to receive immediate payment of disability-benefits. Their mistake, under the hypothetical case, would have gone to the essence of the contract, to the substance of the agreement. But such is not true under the facts in the premises; for, here, the parties entered into a contract which assumed the very facts that eventually materialized—i. e., the possibility that a doubtful claim might later prove valid and enforceable. See Denny v. United States, 7 Cir., 1939, 103 F.2d 960, 964; cf. Pacific Mut. Life Ins. Co. v. Jacob, 8 Cir., 1937, 87 F.2d 870.

It becomes apparent that we have no quarrel with the general rule, substantially stated by counsel for the appellee, that a mutual mistake as to the existence of facts which go to the essence of a contract will render a contract voidable where it later appears that such facts did not exist. Cf. Allen v. Hammond, 1837, 36 U.S.

63, 11 Pet. 63, 9 L.Ed. 633. As we have stated above, however, we do not believe that the alleged mistake herein went to the essence of the cash-surrender agreement. Furthermore, as we shall outline below, we do not believe that the parties actually made a mutual mistake of fact.

In determining whether there has been a mutual mistake of fact, we must examine ·the facts as they existed at the time of the agreement for the cash-surrender of the policy. A mutual mistake in prophecy or opinion may not be taken as a ground for rescission where such mistake becomes evident through the passage of time. Cf. Chicago & N. W. R. Co. v. Wilcox, 8 Cir., 116 F. 913, 914, 915. What is today only a conjecture, an opinion, or a guess, might by tomorrow, through the exercise of hind-sight, be regarded then as an absolute fact. Whether a particular insured is totally and permanently disabled at a given point of time may well be, in the more unfortunate and obvious cases, an absolute matter of fact. Then again, where an insured is suffering only mildly from sporadic, desultory ailments, it becomes but a vague conjecture as to whether or not his disability is total and permanent. Obviously, such a consideration is a matter of degree and is a problem to be decided under the facts of each case as it arises.

We have concluded that on February 27, 1933, the ultimate state of Garland's health with reference to total permanent disability was not then a matter of fact but was, rather, a matter of opinion and conjecture. We favor the relevant observations of Judge Dietrich in United States v. Buzard, 9 Cir., 1929, 33 F.2d 883, 885, 886, wherein he stated in reference to Government insurance: "The underlying contention for appellee seems to be that by the verdict of the jury it is conclusively established that prior to and on March 2, 1920, he was totally and permanently disabled; that therefore upon that date his term contract had ceased to be insurance, and had been superseded by a matured claim; that for these reasons the parties were powerless either to reinstate or convert, and hence that all that was done looking to those ends was ineffective and void. And such, it is to be inferred, was the theory adopted by the court below. But the conclusion does not necessarily follow. Had the ultimate fact of total disability then been known to the parties, the position might be tenable; that we do not decide. But admittedly it was not known.

Total and permanent disability is often a question of great uncertainty, and frequently it is incapable of conclusive proof. With all the ascertainable facts and circumstances before them, both laymen and scientific experts are sometimes at variance in their conclusions. But in the practical administration of the law junctures arise where it becomes necessary to make a determination for the future guidance of the parties in the performance of their obligations and in the assertion of their rights. If at such time the insured and the government officers, with all available information before them, in good faith agree upon resolving what both sides recognize as a doubtful issue, one way or the other, and, upon the assumption that the status so agreed upon is correct, enter into a new contract to supersede the old, and both thereafter act pursuant thereto, it would lead to intolerable confusion, and often result in injustice, if now one, and then the other, party may, when his interests so dictate, repudiate the contract with the contention that the determination of the doubtful issue was erroneously made. The case would be not unlike an ordinary compromise where parties, being in doubt as to their rights and obligations, make a binding adjustment by mutual agreement."

Cases involving the reduction of the face-value of policies are clearly distinguishable from the instant case. E. g., Mutual Life Ins. Co. v. Drummond, 8 Cir., 1940, 111 F. 2d 282; Gambill v. United States, supra. In such cases, the parties entered into subsequent negotiations for a new policy assuming that no matured right had yet come into existence under the higher face-value of the old agreement. When in fact the right of the insured had accrued prior to the execution of a policy of a reduced face-value, some courts have allowed recovery on the basis of the original and higher-valued policy.

Cases like United States v. Schweppe, 8 Cir., 1930, 38 F.2d 595, and United States v. Golden, 10 Cir., 1929, 34 F.2d 367, represent one of the two views formerly held by the federal courts concerning the rights of veterans whose original term insurance policies had lapsed and had thereafter been reinstated or converted into some other form. See United States v. Arzner, 1933, 287 U.S. 470, 472, 53 S.Ct. 238, 77 L.Ed. 436, affirming 9 Cir., 1932, 57 F.2d 488. The divergent views of the federal courts on this subject were settled by the Act of

July 3, 1930, amending the World War Veterans' Act of 1924, 38 U.S.C.A. § 421 et seq.

 In concluding that the District Court was in error, we have been mindful of the practical results of our decision. The recognition of the validity of an executed cash-surrender agreement allows for a more certain and a more accurate computation of an insurance company's reserves, gains, losses, and dividends. If the judgment below were sustained, the Administrator of Veterans' Affairs could protect insurance funds only by refusing to pay cash-surrender values until he was certain that an insured had not become totally and permanently disabled. Yet, any refusal of the Administrator to make such payment would be a plain breach of the insurance contract. The hardships resulting to a litigant under the facts of a particular case will not affect this Court's conclusions where such conclusions would bring impractical and anomalous consequences. When appellant, upon application of insured, paid to insured the cash-surrender value of the second policy, it had received no notice whatsoever of insured's disability. Obviously, then, appellant paid this cash-surrender value under an absolute obligation so to do, without any mistake of fact as to the disability of the insured.

Our ruling on the issue of "mutual mistake of fact" makes it unnecessary for us to consider the procedural question raised by appellant.

For the foregoing reasons, the judgment of the District Court is reversed.

Reversed.