JOHN P. WOOLDRIDGE ET AL. *v.* EXXON
CORPORATION ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 233379
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed February 23, 1984

*F. Timothy McNamara,* for the plaintiffs.
*Shipman & Goodwin,* for the defendants.
*Farrell & Barr,* for the defendant David Brown.

SUSCO, J. The plaintiffs brought this action for breach of a lease agreement and for rescission of that agreement. In December, 1972, the plaintiffs and the predecessor of the defendant Exxon Corporation, Humble Oil Company, entered into a lease of premises located at 1249 Farmington Avenue, West Hartford, which was operated as a gasoline service station. The agreement was effective January 1, 1973, and was for a term of twenty years. At the same time, the plaintiffs entered into leases with Humble Oil for other service station properties which are not here in issue. In 1973, as permitted by its lease with the plaintiffs, Exxon sublet these premises to the defendant David Brown. The lease between the plaintiffs and the defendant Exxon provides for an annual rental of $28,700, payable monthly, plus a gallonage override for gallons sold in excess of 950,000 gallons per year at the rate of 1.5 cents per gallon.

In March, 1979, William Wooldridge observed a truck with no markings on it making a gasoline delivery at the premises. Later that same month, he saw a truck with the name Advanced Gas on the cab making another delivery. The evidence shows that Advanced Gas Company made deliveries to Brown's Automotive Service on March 10, 1979, March 16, 1979, March 22, 1979, and April 12, 1979. None of these was a delivery of Exxon products. On April 13, 1979, the plaintiffs' lawyer wrote to Exxon to notify it of the sale of unbranded gasoline. On April 19, 1979, Exxon wrote Brown to demand that he cease selling such gasoline. In total, 30,500 gallons of unbranded gasoline were delivered to Brown. The evidence fails to establish a breach by Exxon of its lease. The lease itself contains a so-called cure provision. Under it the lessor agreed not to exercise its remedies by reason of default unless it notifies the lessee of the default and the lessee fails to remedy it within thirty days of the notice. Exxon took such

action within thirty days. The plaintiffs have failed to prove that deliveries or sales of unbranded gasoline occurred after May 13, 1979. While the plaintiffs' complaint alleges, as well, that the provisions of the lease calling for the lessee to keep accurate records of motor fuel sales at the premises and for compliance with laws, ordinances, rules and regulations were also breached, those allegations were not proved. The evidence shows that Brown covered the Exxon label and logo on all of his pumps while he was selling unbranded gasoline. The court finds that the sale of 30,500 gallons of unbranded gasoline over a one month period while gasoline was in short supply owing to the oil embargo in a year when Brown received some 870,007 gallons of Exxon gasoline cannot be considered a material breach of the agreement. See 4 Corbin, Contracts § 946. Further, the lessee cured the default in accordance with the terms of the lease itself within thirty days of notice of the default.

In the second count of their complaint, the plaintiffs seek rescission of the agreement based on mutual mistake of fact. The facts as to which the parties are alleged to have been mistaken are "that sales of motor fuel on the demised premises could meet the expectations of the parties" and that Exxon could supply the amount of motor fuel "necessary to provide adequate consideration to the parties." Wooldridge testified that, on the basis of his past experience, he expected that the number of gallons sold annually at the premises would increase. On the other hand, Glynn, who negotiated this and other leases with Wooldridge, felt that Wooldridge's projections were overly optimistic. Both parties did contemplate growth in sales. To justify rescission of a contract, however, a mistake must be of an existing or past fact. 17 Am. Jur. 2d, Contracts § 143. Mistakes in predicting the future, understandably, cannot form the basis for rescinding a contract.

*United States* v. *Garland,* 122 F.2d 118, 122 (4th Cir.), cert. denied, 314 U.S. 685, 62 S. Ct. 189, 86 L. Ed. 548 (1941); *Herman* v. *Mutual Life Ins. Co. of New York,* 108 F.2d 678, 680–81 (3d Cir. 1939). While it is clear that neither party contemplated the exact changes in oil supply the future brought, changes in economic conditions are always at risk in business agreements. Long-term leases are, by their very nature, a risk. Wooldridge and his co-joint venturers sought to minimize that risk by a guaranteed annual rental of $28,700. Exxon sought to do so by a cap on the annual rental. Future market predictions are not the sort of mutual mistake that will support the remedy of rescission. See *Buol Machine Co.* v. *Buckens,* 146 Conn. 639, 153 A.2d 826 (1959).

In the third count, the plaintiffs seek rescission on the basis of a theory of frustration of purpose. Our court has recognized that "where the objectives of the contract have been utterly defeated by circumstances arising after the formation of the agreement," a promisor may be excused from performance. *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 350–51, 225 A.2d 797 (1966). In that case, the Supreme Court found that an impending, though not actual, condemnation did not constitute frustration of the defendant's purpose of providing storage space.

Here, the circumstances unforeseen by the parties were drastic diminution of the supply of gasoline caused by an oil embargo, increase in prices and decrease in demand. Wooldridge testified that he entered into this lease agreement because he wanted to get out of the day-to-day operation of the gasoline business. The base rental of $28,700 guaranteed him and his coplaintiffs an annual income and protected the plaintiffs against a decreased volume of sales. While the plaintiffs are obligated to pay the real estate taxes for the premises, there has been no showing that the plaintiffs have

incurred a loss from this agreement. This, then, is a far cry from the facts with which the United States District Court was confronted in *Aluminum Co. of America* v. *Essex Group, Inc.,* 499 F. Sup. 53 (W.D. Pa. 1980). Disappointment at the level of income produced is a far cry from an utter defeat of a party's objectives. The plaintiffs can and do still rent these premises to Exxon and Exxon, through the defendant Brown, still operates a gasoline service station there. Both defendants still can meet their rental obligations. The plaintiffs urge the court to utilize the test of *Downing* v. *Stiles,* 635 P.2d 808 (Wyo. 1981). In doing so, the court cannot find that the test was met. Whatever frustration the parties may have incurred because volume of sales have not increased as Wooldridge projected (although the court finds Exxon's projections were less optimistic), the plaintiffs' agreement to a base rental belies their claim of reliance on an increasing volume as a basis for the agreement. Further, the court cannot find that the principal purpose of the contract has been frustrated or that the frustration was substantial. Indeed, the most that can be said is that the plaintiffs are not making as much of a profit as they had hoped. That is not grounds for rescission. Mere economic hardship is not enough. See Restatement (Second), Contracts § 281 (Tent. Draft No. 9). On this record, however, the court cannot even find such hardship. Rescission is inappropriate to relieve a party of a bargain, freely negotiated, which has proved less attractive than was hoped.

Judgment for the defendants on all counts.