[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs brought this action to recover their deposit made in connection with an agreement to purchase real estate in Durham, Connecticut. The plaintiffs claim that, because the CT Page 6060 defendant partnership failed to perform its obligations under the agreement, they are entitled to refund of the deposit. Defendant asserts a panoply of defenses, including waiver, mutual mistake, prevention by intervening governmental regulation and breach of an implied covenant of good faith.
Based on a fair preponderance of the evidence, the court finds the following material facts proven:
On November 18, 1987 the plaintiffs, Robert Warner, James Warner, Vernon Warner and Peter Panaroni, ("buyers") entered into an agreement with the defendant, Laurel Associates, a general partnership. ("seller") The agreement was signed on behalf of the partnership by Ned B. Wilson, a general partner, and by all plaintiffs.
The agreement provides for the sale of approximately seventy-one acres of land located in Durham, Connecticut owned by the defendant for the price of $1,700,000.00. Among other things, the agreement recites that the parties had entered into a prior agreement dated June 16, 1987 ("original agreement") and that the parties wished to proceed with development of the land into a "cluster development"; the agreement provides that the original agreement is "rescinded, abrogated and annulled" and superseded by the November agreement.
The November agreement further provides that the sum of $150,000.00 has been paid by the buyers to the seller at or before the signing of the agreement, "receipt of all of which sum Seller hereby acknowledges", that the sum of $150,000.00 is to be used as set forth in Paragraph 14 of the agreement. The November agreement further provides that the deposit is not refundable except upon "Seller's Failure and/or inability to convey marketable title" or "failure to fulfill the conditions of paragraph 12." That deposit was authorized to be used for management as well as engineering services.
Buyers' obligation to close is contingent on several conditions including final approval for a cluster development containing at least 86 bedrooms in the aggregate.
According to the original agreement, the sale price of the property was $1,500,000.00 with a $100,000.00 deposit which was to be expended for engineering work and other services required in obtaining subdivision approval from the Durham Planning and Zoning Commission. That deposit was also refundable if the seller was not able to convey marketable title or upon other contractual conditions. The parties contemplated approval of a subdivision by the Durham Planning and Zoning Commission. CT Page 6061
Pursuant to that agreement, the defendant spent $50,000.00 for management services at the rate of $9,000.00 per month and expended $50,000.00 for engineering services in preparation for subdivision approval.
The November agreement requires the seller to use "due diligence" to obtain final approval of a cluster development with a "target" of forty-three two bedroom units and eight three bedroom units. Buyers extended their option date on May 16, 1988.
On January 6, 1988, the defendant applied to the Durham Planning and Zoning Commission for a special permit to construct a Planned Residential Development on the premises. The application, as originally filed, sought 40 units containing 100 bedrooms. If approved, that plan would have complied with the conditions of the agreement. After hearings and review of reports from the Department of Environmental Protection, the defendant submitted a proposed revision to its plan seeking approval of 18 units containing 32 bedrooms located on 45 acres, reserving 30 acres of open space. On September 26, 1988, the Commission decided as follows: "The Commission specifically denies the remaining 68 bedrooms and the remaining 22 units which were originally requested. This denial is not intended to prevent the applicant from submitting a new application for special exception to modify the number of units or bedrooms or for a different use of the remaining 26 acres."
Following this decision, the plaintiffs and the defendant continued to negotiate concerning the project and the possibility of obtaining approval to develop the property in accordance with the terms of the agreement. However, on May 1, 1989, the defendant, apparently abandoning the effort, applied for a 9-lot subdivision for the 26 remaining acres.
The defendant has never received approval for a cluster development containing at least 86 bedrooms as required by the agreement. The defendant has refused to refund the deposit demanded by the plaintiffs. On August 28, 1989 the plaintiffs brought this action seeking return of the $150,000.00 deposit plus interest and costs.
The court agrees with the plaintiffs that the plain language of the November agreement entitles the plaintiffs to the deposit refund. The agreement provides that the sum of $150,000.00 was paid by the plaintiffs to the defendant. It further provides that the November agreement supersedes the original agreement and "sets forth the entire understanding between the parties." Where, as here, the parties stated their clear intention and understanding that the November agreement is the final agreement, the court is not in a position to reconstruct the agreement. Harris v. CT Page 6062 Clinton, 142 Conn. 204 (1955).
The agreement provides further, as noted, that "[s]aid sum is to be used as set forth in Paragraph 14 of this Agreement and shall not be refundable by SELLER TO BUYERS for any reason other than SELLER's failure and/or inability to convey marketable title to the Premises to BUYERS at the Closing or SELLER'S failure to fulfill the conditions of Paragraph 12 below." Paragraph 12 states, in part, that "BUYERS" liability to close the within contemplated Agreement is conditioned upon the fulfillment of each and all of the following conditions at or prior to the Closing." One of the conditions set forth in Paragraph 12 is obtaining final approval for a cluster development "showing `approved units' containing at least eighty-six bedrooms in the aggregate." The evidence clearly demonstrated that approval for eighty-six bedrooms in the aggregate was never obtained.
Paragraph 14 states that the plaintiffs advanced the sum of $150,000.00 and then specifies the conditions under which the deposit could be used. The fact that the defendant was permitted to use the deposit cannot be interpreted to mean that the deposit is not refundable. The fact that the use of the deposit was provided for in Paragraph 14 does not affect seller's obligation to refund the deposit if, ultimately, the seller cannot perform its obligation. A contract must be construed as a whole and all relevant provisions considered together. LAR-ROB Bus Corporation v. Town of Fairfield, 170 Conn. 397 (1976).
As of May 1, 1989, when defendant applied for single family development, which was not contemplated by the agreement, the plaintiffs were entitled to return of their deposit, together with interest at the legal rate from that date.
The defendant has raised a number of defenses, including the following:
(1) Waiver of Return of Deposit
There was no evidence that the plaintiffs waived the right to refund of their deposit. Bradford Novelty Co. v. Technomatic, Inc., 142 Conn. 166 (1955). A mere extension of the time to obtain approval cannot reasonably be interpreted to be an intentional relinquishment of a known right.
The assertion that the defendant relied to its detriment on a waiver and that the plaintiffs are estopped from demanding return of the deposit is not supported by the evidence.
(2) Avoidance By Mutual Mistake CT Page 6063
The defendant's argument that the performance of the contract should be excused on the basis of mutual mistake, once again, is not supported by the evidence. Wooldridge v. Foxon Corp.,39 Conn. Sup. 190 (1984). The evidence established that the payment of the prior deposit had been deemed incorporated into the November 1987 agreement. The defendant's argument that neither party recognized this fact is not supported by the evidence. There was no evidence of mutual mistake to support this contention.
(3) Prevention By Intervening Governmental Regulation
The rule of law cited is not applicable to the present case. As the plaintiffs point out, the cases cited by the defendant involve situations where governmental regulations are changed after the entry of a contract when they could not have been contemplated by the parties. In this case, the agreement specifically contemplates the approval by the Durham Zoning Authority.
It is clear that "the event upon which the obligor relies to excuse his performance cannot be an event that the parties foresaw at the time of the contract." Dills v. Enfield, 210 Conn. 705 at p. 718 (1989). The defendant recognized the risk that zoning approval might not be obtained the doctrine of impossibility cannot be used to shift this risk. Dills v. Enfield, supra at p. 720.
(4) A Partner Acted Outside Scope of Partnership
The defendant argues that a sale of all the property of the partnership does not constitute carrying on in the usual way the business of a partnership and, thus, the partnership is not bound by the agreement. The cases cited do not apply to the situation presented here, involving a real estate development company which, at the time, owns a single tract of land.
(5) Breach of Covenant of Good Faith
There is no basis in the evidence to support this claim. Warner v. Konover, 210 Conn. 150 (1989). Even though the defendant did not obtain zoning approval, the plaintiffs were willing to allow addition time. The parties continued to meet and negotiate in an effort to obtain the necessary zoning approval. There is no evidence of lack of good faith or unfair dealing on the part of the plaintiffs.
(6) Partial Performance by Seller
The doctrine of partial performance is not applicable. Here, CT Page 6064 zoning approval was a condition precedent to the right to performance. Where the defendant failed to meet the condition of zoning approval its right to enforce the contract does not exist. Lach v. Cahill, 138 Conn. 418 (1951). There can be no partial performance of a contingency or condition precedent. "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contracts." Id. at p. 421.
For all the foregoing reasons, judgment may enter in favor of the plaintiffs in the amount of $150,000. plus interest at the legal rate from May 1, 1989 to the date of this judgment.
Barry R. Schaller, Judge.